# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **CONCIERGE AUCTIONS, LLC,** § <br> *Petitioner* § <br> § <br> v. § <br> § <br> **ICB PROPERTIES OF MIAMI, LLC,** § <br> *Respondent* § <br> § | Case No. A-21-CV-894-LY-SH |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE**

Before the Court are Petitioner Concierge Auctions, LLC's Petition to Confirm Arbitration Award, filed October 5, 2021 (Dkt. 1); Respondent ICB Properties of Miami, LLC's Motion to Vacate Arbitration Award Dated July 26, 2021, filed October 26, 2021 (Dkt. 10); and the associated response and reply briefs. On December 6, 2021, the District Court referred all motions in this case to the undersigned Magistrate Judge for resolution or Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 15.

## I.   General Background

Petitioner Concierge Auctions, LLC[1] ("Concierge") brings this action under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm a final arbitration award ordering Respondent ICB Properties of Miami, LLC[2] ("ICB") to pay Concierge $194,417.70 in attorneys' fees, costs, and expenses. Dkt. 1.

---

[1] Concierge is a Delaware limited liability company with places of business in New York, New York and Austin, Texas. Dkt. 1 ¶ 2.

[2] ICB is a Florida limited liability company with its principal place of business in Miami, Florida. *Id.* ¶ 4.

### A. Auction Agreement

ICB is a holding company for "41 Arvida," a 14,000-square-foot mansion on a 1.24-acre waterfront lot in Coral Gables, Florida (the "Property"). Dkt. 10 at 4; Dkt. 10-1 at 9. ICB purchased the Property in 2014 for $25 million, in what was at that time "the most expensive residential sale ever in Coral Gables, Florida." Dkt. 10 at 5. ICB gutted the Property and rebuilt it, spending $9 million on renovations. *Id.* ICB decided to sell the Property after it was damaged by Hurricane Irma in 2017.

In February 2018, ICB entered into a listing agreement with Engel & Völkers ("E&V"), an international real estate agency specializing in brokerage of premium residential properties, to list the Property for $58 million, later amended to $68 million. *Id.* at 7; Dkt. 10-1 at 62, 78. ICB alleges that, in November 2018, E&V "introduced ICB to the concept of using Concierge to sell 41 Arvida, stating that Concierge's auction platform was a new way to sell luxury properties and the ideal platform to get the highest and best sale price." Dkt. 10 at 7. Concierge is a real estate auction marking firm that conducts auctions of high-end residential properties. ICB alleges that, before ICB agreed to hire Concierge, E&V did not disclose to ICB that E&V had a close business relationship with Concierge. *Id.*

On January 23, 2019, ICB and Concierge executed an auction agreement (the "Auction Agreement"). Dkt. 1-2. In exchange for auction services, Concierge would receive "a fee equal to twelve percent (12%)" of either the high bid for the Property or the accepted purchase price. *Id.* § 6. The Auction Agreement further provided that the auction would commence on February 18, 2019, and be conducted through Concierge's online digital bidding platform. *Id.* § 1. Under the Auction Agreement, ICB was obligated to sell the Property to the highest bidder or back-up bidder "regardless of price." *Id.* at 1. ICB had the right, however, "to cancel the Auction in writing

between 9:00 am and 12:00 pm local time . . . on the Auction date." *Id.* § 1. The Auction Agreement provided that the projected opening bid range for the Property would be between $15 million and $25 million. *Id.* at 1.

The Auction Agreement also contained an arbitration provision (the "Arbitration Provision"), which required the parties to "submit any and all controversies, disputes, claims and matters of difference arising out of or relating to this Agreement . . . exclusively to arbitration in Austin, Texas in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association." *Id.* § 17.

Five people registered for the auction, including Steven Lempera. Dkt. 14-1 at 28. The auction commenced on March 22, 2019, and the Property was sold to Lempera, the highest bidder, for $25.5 million. Dkt. 13 at 8.

ICB contends that the Property should have sold closer to the listing price of $68 million and that: "In effect, the auction was a sham." Dkt. 10-1 at 4. Specifically, ICB alleges that Concierge (1) used "sham stalking-horse buyers and a shill bidder," (2) provided "misleading and inaccurate information to ICB [to] demonstrate interest in the property in an effort to induce ICB to not cancel the auction," (3) withheld "relevant and key information from ICB," and (4) provided "false information to ICB to induce it to enter into an auction agreement." Dkt. 10 at 2.

At closing, ICB represented that based on its listing agreement with E&V, it was not required to pay the commission to the buyer's broker, Coldwell Banker Residential Real Estate ("Coldwell Banker"), because the Property sold below $29 million. Dkt. 10-1 at 4.

**B. Litigation and Arbitration**

On May 16, 2019, Coldwell Banker filed suit against ICB in Florida state court, alleging that ICB breached the listing agreement between ICB and E&V by failing to pay it the buyer's broker

commission. *Coldwell Banker v. ICB Properties of Miami, LLC*, No. 2019-014915-CA-01 (Fla. Cir. Ct. May 16, 2019), Dkt. 14-2 (the "Florida Action"). In response, ICB counterclaimed and argued that E&V, not ICB, was obligated to pay the commission. Dkt. 10-1. ICB also filed a Third-Party Complaint against Concierge, alleging that Concierge breached the Auction Agreement by failing to properly conduct the auction. *Id.* ¶ 187. ICB asserted additional claims against Concierge for breach of implied covenant of good faith and fair dealing, fraudulent inducement, misrepresentation, negligence, contribution, and breach of fiduciary duty. *Id.* ¶¶ 199-262.

On September 17, 2019, Concierge invoked the Arbitration Provision in the Auction Agreement and filed a Demand for Arbitration against ICB with the American Arbitration Association ("AAA") in Austin, Texas (AAA Case No. 01-19-0002-9747) (the "Arbitration"). Dkt. 1-3. Concierge alleged two claims of breach of contract, a claim for punitive damages, and a claim for attorneys' fees. Dkt. 1 at 4. Concierge alleged that ICB breached the Arbitration Provision in the Auction Agreement by filing claims against ICB in Florida state court. Concierge also alleged that ICB breached the confidentiality provision in the Auction Agreement, which prohibits ICB from publicly disclosing the terms of the Auction Agreement or facts concerning the Auction. Dkt. 14-3 at 4. Jeff Lefkowitz, Esq. was appointed as the arbitrator pursuant to the Commercial Rules of the AAA and the Auction Agreement. Dkt. 1 at 4.

Concierge filed its first Motion to Compel Arbitration and Stay in the Florida Action on September 18, 2019, based on the Arbitration Provision. Dkt. 10 at 9. The Florida state court never ruled on the motion. *Id.* Concierge filed a second Motion to Compel Arbitration and Stay on February 2, 2021. Dkt. 10-15 at 1. On July 22, 2021, the Florida state court denied the Motion to Stay without prejudice in a one-sentence ruling. *Id.* The Florida Action remains pending.

On February 28, 2020, ICB filed a Motion to Dismiss for Lack of Jurisdiction in the Arbitration proceeding, arguing that the Arbitrator should dismiss or stay the proceeding until resolution of the Florida Action. Dkt. 10-3 at 5. The Arbitrator denied the Motion to Dismiss, and the Arbitration proceeded. Dkt. 14-4.

On July 26, 2021, the Arbitrator issued his Final Award (the "Final Arbitration Award"). Dkt. 1-1. The Arbitrator ruled in Concierge's favor on its claims for breach of contract and attorneys' fees, cost, and expenses incurred in the Florida Action, but dismissed its claims for breach of the confidentiality provision and for punitive damages. *Id.* at 2-3.

The Arbitrator found that Concierge was the "prevailing party" in the Arbitration because it prevailed on its claim for breach of the Arbitration Provision and, thus, was entitled to recover attorneys' fees and expenses incurred in the Arbitration as to that claim. Accordingly, the Arbitrator ordered ICB to pay Concierge (1) $20,000 in attorneys' fees, costs, and expenses incurred in the Florida Action; (2) $165,122.70 in attorneys' fees and $122.70 in expenses incurred in the Arbitration proceeding; (3) $40,000 in conditional attorneys' fees if ICB unsuccessfully opposed confirmation of the Final Arbitration Award; and (4) $27,295.00 for Arbitration fees and expenses. *Id.* at 4-6.

## II.    Legal Standards

"Congress enacted the FAA to replace judicial indisposition to arbitration with a national policy favoring it and placing arbitration agreements on equal footing with all other contracts." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (cleaned up). The FAA makes contracts to arbitrate "valid, irrevocable, and enforceable," so long as their subject involves "commerce." *Id.* (quoting 9 U.S.C. § 2). The Act also supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. 9 U.S.C. §§ 9-11.

In light of the strong federal policy favoring arbitration, judicial review of an arbitration award has been described as "extraordinarily narrow," "severely limited," and "one of the most deferential standards 'known to the law.'" *Commc'ns Workers of Am., AFL-CIO v. Sw. Bell Tel. Co.*, 953 F.3d 822, 826 (5th Cir. 2020) (citations omitted). "On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.'" *Hall St. Assocs., L.L.C.*, 552 U.S. at 582 (quoting 9 U.S.C. § 9). A court may vacate an arbitrator's decision "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013).

Section 10(a) provides the exclusive grounds for vacatur of an arbitration award. *Hall St. Assocs.,* 552 U.S. at 586; *Cooper v. Westend Capital Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016). Under this section, an award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators;
>
> (3) where the arbitrators were guilty of misconduct . . . or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it. *Cooper*, 832 F.3d at 544.

### III.    Analysis

ICB argues that the Arbitration Award should be vacated because the Arbitrator exceeded his authority, in violation of Section 10(a)(4) of the FAA, by determining that ICB breached the Arbitration Provision "because the arbitration provision divested the arbitrator of authority to rule on arbitral jurisdiction." Dkt. 10 at 12. ICB also argues that the Arbitration Award should

vacated because the Arbitrator should have abstained from adjudicating this dispute until the Florida Action was resolved.

### A. Section 10(a)(4) of the FAA

As stated above, 9 U.S.C. Section 10(a)(4) provides that a court may vacate an arbitration award "where the arbitrators exceeded their powers." An arbitrator exceeds his powers if he acts "contrary to express contractual provisions." *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 946 (5th Cir. 2005). "Section 10(a)(4) has been interpreted narrowly and allows vacatur of an award '[o]nly if the arbitrator acts outside the scope of his contractually delegated authority— issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract.'" *Kemper Corp. Servs., Inc. v. Computer Scis. Corp.*, 946 F.3d 817, 822 (5th Cir. 2020) (quoting *Oxford Health Plans*, 569 U.S. at 569). A court "must sustain an arbitration award even if [it] disagree[s] with the arbitrator's interpretation of the underlying contract as long as the arbitrator's decision draws its essence from the contract." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013). The sole question for the court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans*, 569 U.S. at 569.

A reviewing court examining whether an arbitrator exceeded his or her powers must resolve all doubts in favor of arbitration. *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012). Any limitation on the arbitrator's authority "must be clear and unambiguous." *YPF S.A. v. Apache Overseas, Inc.*, 924 F.3d 815, 818-19 (5th Cir. 2019); *see also 21st Fin. Servs., L.L.C. v. Manchester Fin. Bank*, 747 F.3d 331, 336 (5th Cir. 2014) (stating that limitation on arbitrator's authority must be "*plain and unambiguous*"). If there is ambiguity as to whether an arbitrator is acting within the scope of his authority, "that ambiguity must be resolved in favor of

the arbitrator." *Am. Eagle Airlines, Inc. v. Airline Pilots Ass'n*, 343 F.3d 401, 405 (5th Cir. 2003). A party seeking vacatur of an arbitral award under Section 10(a)(4) "bears a heavy burden." *Kemper Corp. Servs.*, 946 F.3d at 822.

### B. Arbitral Jurisdiction

The Arbitration Provision contained in the Auction Agreement states in full:

> **17. ARBITRATION; VENUE; PREVAILING PARTY**. The parties shall submit any and all controversies, disputes, claims and matters of difference arising out of or relating to this Agreement, including but not limited to its performance, enforcement, scope and/or interpretation, exclusively to arbitration in Austin, Texas in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association then in effect (the "Rules"). Notwithstanding anything to the contrary contained in this Agreement, each of the Parties agrees that this Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act applies to and governs this arbitration provision and shall preempt any inconsistent state or federal rule or law. The parties agree to grant all powers to the arbitrator to the fullest extent of the Rules. The parties will attempt, in good faith, to agree on a retired judge as sole arbitrator. In the absence of such agreement, there will be three arbitrators, selected in accordance with the Rules. If there are three arbitrators, a decision reached by at least two of the three arbitrators will be the decision of the arbitration panel. The parties agree to abide by all decisions reached and awards rendered in such arbitration proceedings, and all such decisions and awards will be final and binding on both parties. Judgment upon the award may be entered in any court of competent jurisdiction or application may be made to such court for a judicial acceptance of the award and an order of enforcement. **Each of the Parties consents to the exclusive jurisdiction of the state and federal courts located in the County of Travis, State of Texas (and of the appropriate appellate courts therefrom) in any such action or proceeding (including an action to compel arbitration or to stay any proceeding inconsistent with this provision) and in any other action or proceeding arising out of or relating to this Agreement, including but not limited to its performance, enforcement, scope and/or interpretation, and waives any objection to venue or to the jurisdiction of such courts**. Each of the Parties agrees that process in any action or proceeding may be served personally or by registered mail anywhere in the world. In the event of any such arbitration or any permitted court action, the

>prevailing party shall be entitled to reimbursement from the nonprevailing party of all reasonable attorney's fees and costs/expenses of the prevailing party and any award of the arbitrator(s) or court will include costs and reasonable attorneys' fees to the prevailing party. If any Party files a court action arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, to compel or stay arbitration (by petition, motion, or otherwise), or to confirm, vacate or modify an arbitration award (except for a non-contested application to confirm), or to seek payment of any attorneys' fees and/or costs awarded by the arbitrator(s) but not paid by the non-prevailing party in the arbitration, or in the event any Party seeks enforcement of any arbitration award or judgment arising out of an arbitration award, reasonable attorney's fees and other costs incurred by the prevailing Party in such court action or in connection with such judgment enforcement shall be reimbursed by the non-prevailing Party. THE PARTIES UNDERSTAND AND AGREE THAT, ABSENT THIS AGREEMENT, THEY WOULD HAVE THE RIGHT TO SUE EACH OTHER IN COURT, AND THE RIGHT TO A JURY TRIAL, BUT THEY GIVE UP THOSE RIGHTS VOLUNTARILY AND AGREE TO RESOLVE ANY AND ALL GRIEVANCES BY ARBITRATION IN ACCORDANCE WITH THIS SECTION 17.

Dkt. 1-2 § 17 (emphasis added).

ICB argues that the emphasized sentence "divested the arbitrator of the authority to interpret or enforce the arbitration provision" and "vested the state and federal courts in Travis County, Texas with exclusive jurisdiction to determine motions to compel arbitration, or other actions related to the auction agreement's performance or enforcement." Dkt. 10 at 12.[3] But ICB takes this sentence out of context. The language "in any such action or proceeding" clearly and

---

[3] In support of its argument, ICB cites *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256 (5th Cir. 2015), and *Sw. Airlines Co. v. Loc. 555, Transp. Workers Union of Am. AFL-CIO*, 912 F.3d 838 (5th Cir. 2019). ICB's reliance on these cases is misplaced. In *PoolRe Ins. Corp.*, the Fifth Circuit affirmed the district court's order vacating an arbitration award made by an arbitrator not appointed under the method provided in the parties' contract. 783 F.3d at 264. In *Sw. Airlines Co.*, the Fifth Circuit held that an arbitration decision exceeded the scope of the arbitrator's jurisdiction because the arbitrator ignored express terms in the arbitration provision. 912 F.3d at 846. Accordingly, these cases do not support ICB's arguments or apply to the facts of this case.

unambiguously refers to the previous sentence, which states: "Judgment upon the award may be entered in any court of competent jurisdiction or application may be made to such court for a judicial acceptance of the award and an order of enforcement." Dkt. 1-2 § 17. The clause "in any such action" refers to court actions confirming, enforcing, or challenging a final arbitration award.

The remainder of the Arbitration Provision clearly grants the Arbitrator the power to decide whether ICB breached the Arbitration Provision. Specifically, the Arbitration Provision requires the parties to submit "any and all controversies, disputes, claims and matters of difference arising out of or relating to this Agreement . . . exclusively to arbitration in Austin, Texas." Dkt. 1-2 ¶ 17. The parties further agreed "to grant all powers to the arbitrator to the fullest extent of the Rules," and "to abide by all decisions reached and awards rendered in such arbitration proceedings, and all such decisions and awards will be final and binding on both parties." *Id.*

The Supreme Court and the Fifth Circuit Court of Appeals have interpreted similar arbitration provisions as requiring all disputes arising out of the contract to be submitted to arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (describing as "broad" a contractual clause regarding "[a]ny controversy or claim arising out of or relating to this Agreement"); *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 304 (5th Cir. 2021) (holding that arbitration provision providing that "any action arising out of this Agreement shall be an arbitration in Harris County, Texas" was a "broad arbitration clause[ ] capable of expansive reach"); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998) (holding that when parties agree to an arbitration clause governing "[a]ny dispute . . . arising out of or in connection with or relating to this Agreement," they "intend the clause to reach all aspects of the relationship").

In addition, the parties delegated the power to rule on the arbitrability issue to the Arbitrator by expressly incorporating the AAA Rules into the Arbitration Provision. As quoted above, the Arbitration Provision provides that any arbitration shall be "in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association then in effect ("the Rules")." Dkt. 1-2 § 17. Under AAA Rule 7(a), "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279-280 (5th Cir. 2019) (quoting AAA-ARBRLCML R-7 (October 2013)), *cert. granted*, 141 S. Ct. 113 (2020), *and cert. dismissed*, 141 S. Ct. 656 (2021).

The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). A contract "need not contain an express delegation clause to meet this standard; rather, "an arbitration agreement that incorporates the AAA Rules 'presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'" *Archer*, 935 F.3d at 279 (quoting *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)).

Because the Arbitration Provision here expressly incorporates the AAA Rules, there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *Archer*, 935 F.3d at 279. Accordingly, as the parties expressly agreed to arbitrate arbitrability, the Arbitrator had the authority under the Arbitration Provision to determine jurisdiction and arbitrability issues. *See Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (holding that arbitrator

11

did not exceed his powers in issuing arbitration award where arbitrator had authority to determine jurisdiction and arbitrability issues based on incorporation of arbitration rules in the agreement).

ICB has identified no language in the Arbitration Provision plainly and unambiguously limiting the Arbitrator's power to issue the Final Arbitration Award. ICB therefore has failed to sustain its heavy burden under Section 10(a)(4) to show that the Arbitrator exceeded his powers.

### C. Abstention

ICB also argues that the Final Arbitration Award should be vacated because the Arbitrator should have abstained from exercising its jurisdiction over this dispute until the Florida Action was resolved. As discussed above, an arbitrator exceeds his powers only if he acts "contrary to express contractual provisions." *Beaird Indus., Inc.*, 404 F.3d at 946. ICB identifies no language in the Arbitration Provision requiring the Arbitrator to stay an arbitration proceeding until a parallel state court action is resolved.

### D. Conclusion

Under the FAA, a party to an arbitration may apply to a court for an order confirming an arbitration award, and the court "must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. ICB has failed to demonstrate that the Final Arbitration Award should be vacated, modified, or corrected.

## IV.  Recommendation

For these reasons, the undersigned **RECOMMENDS** that the District Court (1) **GRANT** Petitioner Concierge Auction's LLC's Petition to Confirm the Final Arbitration Award (Dkt. 1); (2) **DENY** Respondent ICB Properties of Miami, LLC's Motion to Vacate Arbitration Award Dated July 26, 2021 (Dkt. 10); and (3) enter a Final Judgment confirming the Final Arbitration Award (Dkt. 1-1), award Concierge Auctions, LLC $232,417.70 (plus interest from July 26, 2021) in attorneys' fees and expenses as ordered by the Arbitrator, and close this case.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on June 30, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE